**IN THE COURT OF APPEALS OF IOWA**

No. 16-0473
Filed May 11, 2016

**IN THE INTEREST OF H.E. AND A.R.,**
**Minor children,**

**T.R., Mother,**
Appellant.

**C.R.,**
Intervenor-Appellee
_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

A mother appeals from a review order in a children-in-need-of-assistance proceeding. **REVERSED AND REMANDED.**

Jane K. Odland of Odland Law Firm, P.L.L.C., Newton, for appellant mother

Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for Intervenor-appellee.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for the State.

Larry J. Pettigrew of Pettigrew Law Firm, Newton, for minor children.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

A mother appeals from a dispositional-review order in a children-in-need-of-assistance (CINA) proceeding that continued placement of her two children with their stepmother, who is an intervenor in the case. The mother argues the continued placement with the intervenor is unnecessary and the juvenile court should permit the children to return home under Iowa Code section 232.102 (2015). After reviewing the record, we agree with the mother and reverse the juvenile court order. The children should be placed with their mother under the continued supervision of the Iowa Department of Human Services (DHS).

### I.    Facts and Prior Proceedings

The children at issue, H.E. and A.R., are ages three and one respectively. Their mother and father shared custody of the children, each assuming care for one week at a time. On June 15, 2015, the children came to the attention of the DHS because their father struck H.E.[1] As a result, the court ordered the father have no contact with H.E. or A.R. The children were placed with their mother following their removal from the father's care, and the court adjudicated them as CINA on August 13, 2015.

Before a dispositional hearing on September 17, 2015, the mother informed the DHS that she needed to relocate and would look for housing in Newton. At the hearing, the mother consented to the children's placement with their stepmother until the mother obtained suitable housing. On September 25, 2015, the stepmother filed a motion to intervene in the CINA case. The father

---

[1] The DHS also investigated an alleged assault by the father against his stepdaughter, who also resided in his home.

resisted the stepmother's motion to intervene, but the mother did not resist. On November 23, 2015, the juvenile court granted the stepmother's motion to intervene.

The juvenile court held a disposition-review hearing on December 3, 2015. About one month before that hearing, the mother found a residence in Carlisle. The Family, Safety, Risk and Permanency (FSRP) caseworker inspected and approved the home. The mother lived there with her five-year-old daughter, who is not a party to this case. At the hearing, the DHS caseworker, the guardian ad litem (GAL), and both parents requested the children be returned to the mother's care. The stepmother requested continued placement of the children with her. The court decided it was in the children's best interests to remain with their stepmother. The court noted the mother's housing had been stable for less than one month and determined she had not "made sufficient progress overall to support a safe return of her children."

At a CINA review hearing on February 26, 2016, the mother testified she was ready to care for the children. The GAL and the DHS caseworker recommended H.E. and A.R. be returned to their mother's care. The caseworker testified the mother had maintained stable housing and was increasing her contact with the children. "To the best of her ability" the mother was taking responsibility for transporting H.E. to his appointments for speech therapy and play therapy. (The mother did not have a driver's license and depended on extended family to help with the transportation.) The caseworker testified the mother did need more education to become a better caregiver, but she was

successfully parenting a five-year-old child in her care and making all of these efforts to get back and forth from Carlisle to Newton to Des Moines, we're creating barriers for her, and it would be much easier for her to parent her children and us to educate her on parenting them if they were in her care.

The caseworker also testified the stepmother was not supportive of the mother's reunification with the children and recommended placement in family foster care if the children were not returned to the mother. The children's daycare provider testified to concerns about H.E.'s aggressive behavior that appeared to manifest after contact with his mother. The stepmother testified in opposition to reunification of the children with their mother.

In a March 3, 2016 order, the juvenile court again denied the mother's request for the return of her children. The court acknowledged the mother's progress in maintaining suitable housing and her efforts to keep H.E.'s therapy appointments. But the court found "too many unresolved issues for the court to safely return the children to their mother" and continued placement with the stepmother. The court noted the mother's lack of income, lack of a driver's license, and H.E.'s missed therapy sessions due to transportation issues. The court also expressed concern that A.R. returned from a visit with her mother with head lice and a diaper rash. The court found the mother needed "parenting development" but overlooked the DHS worker's view that such education would be more effective if she had custody of the children.

The mother filed a petition appealing the March 3 order. The stepmother-intervenor filed a brief in support of continued placement with her. The State filed a notice to the court indicating that the DHS took the position in the juvenile court that the children should be returned to their mother's care.

**II.     Standard of Review**

We review de novo a juvenile court order entered after a CINA review hearing. *In re K.B.*, 753 N.W.2d 14, 15 (Iowa 2008). We give weight to the findings of the juvenile court but are not bound by them. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). We are guided by the best interest of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

**III.    Discussion**

At the February 2016 dispositional review hearing, the juvenile court reviewed placement of H.E. and A.R. to decide the best choice among three options: (1) returning the children home, (2) extending the out-of-home placement, or (3) initiating termination-of-parental-rights proceedings. *See K.B.*, 753 N.W.2d at 16 (discussing Iowa Code section 232.102(9)). The first choice, returning the child home, is the preferred outcome. *See In re A.T.*, 799 N.W.2d 148, 151 n.6 (Iowa Ct. App. 2011).

But the juvenile court instead decided to extend the current placement. After our de novo review of the record, we believe the mother established by a preponderance of the evidence that the children would not suffer harm if returned to her care. *See In re D.S.*, 437 N.W.2d 587, 588 (Iowa Ct. App. 1989). The children were adjudicated CINA as a result of the father's behavior. After removal, the mother experienced a housing crisis and voluntarily placed the children in the care of their stepmother so the mother could find a place to live. The mother accomplished that task. The DHS found her current residence appropriate for the children.

Despite the mother's ability to maintain stable housing for several months, the juvenile court questioned the adequacy of her resources, pointing out: "The mother has no income. She lives off her rent-free housing and the FIP benefits and Food Stamps that she receives for her five-year-old daughter." We do not think the mother's strained financial condition should preclude reunification with her children.

Likewise, we disagree with the court's conclusion that the mother has not done enough to show she can safely parent H.E. and A.R. if they are returned to her care. The mother has been parenting her five-year-old daughter without incident. The mother has no apparent substance-abuse or mental-health issues. The DHS worker and GAL are in accord that the younger children can be safely returned to her care. The juvenile court's concerns about "isolated incidents" involving head lice or diaper rash, or the mother's less-than-appropriate response to H.E.'s tantrum, may be addressed through DHS services to improve the mother's parenting skills when the children are returned to her care.

As for H.E.'s therapy sessions, the therapist noted it would be easier for the mother if she did not have to go from Carlisle to Newton to pick him up, then from Newton to Des Moines to attend therapy. We agree. The record also shows the mother has extended family members who have assisted her with transportation needs. The therapist also said "[t]he biggest concern would just be to improve her skill level in dealing with his tantrums—from my understanding, though, many adults in [H.E.'s] life are struggling to do this, so I don't think it is something that should keep him from going home to his mom."

The record does not show that H.E. and A.R are likely to suffer harm as defined in section 232.2(6) if returned to their mother's care. Because we find returning the children to their mother's care with continued DHS supervision is the best option under section 232.102(9), we reverse the order continuing placement with the stepmother. On remand, the juvenile court should direct the DHS to set up a case plan with requirements to ensure the mother continues to improve her parenting skills and the children are able to access the services they need.

**REVERSED AND REMANDED.**